```
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - -   x
                                 :
UNITED STATES OF AMERICA,        :   Case No 15CR120(VAB)
                                 :
              Government,         :
        vs.                      :
                                 :   915 Lafayette Blvd
MIGUEL SOTO,                     :   Bridgeport, CT
                                 :   April 12, 2016
              Defendant.         :
- - - - - - - - - - - - - - -   X


                    TRANSCRIPT OF GUILTY PLEA


 BEFORE:   THE HONORABLE VICTOR A. BOLDEN, U.S.D.J.


 APPEARANCES:
 FOR THE PLAINTIFF:        GORDON HALL, ESQ.
                           U.S. Attorney's Office
                           500 Lafayette Blvd
                           Bridgeport, CT 06604



 FOR THE DEFENDANT:        DAVID A MORAGHAN, ESQ.
                           Smith, Keefe, Moraghan &
                           Waterfall
                           32 City Hall Center
                           Torrington, CT 06790









                 Sharon Montini, RMR, FCRR
                  Official Court Reporter
```

(2:00 p.m.)

THE COURT:  Good afternoon.  We're here in United States v. Miguel Soto.  Will counsel, please, state their appearances for the record.

MR. HALL:  Gordon Hall for the government, your Honor.  Good afternoon.

THE COURT:  Good afternoon, Mr. Hall.

MR. MORAGHAN:  Good afternoon, your Honor.  David Moraghan for Mr. Soto, who is to my left.

THE COURT:  Good morning.  I mean good afternoon, Mr. Moraghan, Mr.  Soto.

Mr. Hall, I understand that the Crime Victims' Rights Act has been satisfied with respect to this proceeding.

MR. HALL:  Yes, your Honor.  There are no identifiable victims.

THE COURT:  Great.  Now, I also understand the purpose of today's proceeding is to accept a guilty plea, but before I do that, Mr. Moraghan, I know there are actually two motions on file for Mr. Soto, one dealing with a motion for dismissal of charges and to incorporate lesser offense, and the other for a bill of particulars. I'm assuming that if he enters a guilty plea today

that those motions will be moot.

MR. MORAGHAN:  Yes, your Honor.

THE COURT:  So I'll deal with that at the end then.  Thank you so much.

I assume there is no objection from you, Mr. Hall, on that.

MR. HALL:  No, your Honor.

THE COURT:  Mr. Soto, I want to begin by telling you to take your time during this proceeding.  I'm in no hurry, and I want to make sure you completely understand what you are doing today, sir.  If at any time during this proceeding you have any questions or problems, or if you need any time to speak with your lawyer, please just let me know and I'll give you all the time you need.  Do you understand, sir?

THE DEFENDANT:  Yes, sir.

THE COURT:  So, Mr. Soto, before accepting your plea, there are a number of questions I must ask you while you are under oath to assure myself that it is a valid plea.

Ms. Gould, would you please swear in Mr. Soto.

THE CLERK:  Yes.

(Oath administered).

THE CLERK:  Please state your name.

THE DEFENDANT:  Miguel Soto.

THE COURT:  Now, Mr. Soto, for the record, I'm going to advise you of your rights.  You have the right to remain silent.  You have the right not to continue with a statement.  Your statements can be used against you.  You have the right to counsel at every stage of these proceedings.  You have the right to have counsel appointed if you cannot afford counsel.  Also, there is an attorney-client privilege and duty of confidentiality, which means you can speak confidentially with your lawyer.  Do you understand these rights, sir?

THE DEFENDANT:  Yes, sir.

THE COURT:  And do you understand that having been sworn in you will be subject to the penalties for perjury or for making a false statement if you do not answer truthfully here today?  Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And do you also understand that if the government chooses to prosecute you for perjury or for making a false statement it can use against you any statement you give here under oath?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Now, would you please give me your full name for the record.

THE DEFENDANT:  Miguel Angel Soto.

THE COURT:  Have you used any other name, sir?

THE DEFENDANT:  No.

THE COURT:  What year were you born?

THE DEFENDANT:  1985.

THE COURT:  And where were you born?

THE DEFENDANT:  Yale-New Haven Hospital.

THE COURT:  So you were born in New Haven, Connecticut.

THE DEFENDANT:  Yes.

THE COURT:  And you are a United States citizen?

THE DEFENDANT:  Yes, sire.

THE COURT:  Have you ever lived outside of the United States, sir?

THE DEFENDANT:  No.

THE COURT:  And how far did you go in school?

THE DEFENDANT:  I went up to the 10th grade.

THE COURT:  And are you now or have you

recently been under the care of a physician, psychiatrist, social worker or counselor?

THE DEFENDANT:  No.

THE COURT:  In the past 48 hours, have you taken any narcotic drugs, medicine or pills, or consumed any alcoholic beverages?

THE DEFENDANT:  No.

THE COURT:  And have you ever been hospitalized or treated for alcoholism or narcotics addiction?

THE DEFENDANT:  No.

THE COURT:  And today, as you are here, sitting here, is your mind clear, sir?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And do you understand exactly what is going on today?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Mr. Moraghan, have you discussed this case with Mr. Soto?

MR. MORAGHAN:  Yes, we have, your Honor.

THE COURT:  And have you had any difficulty in communicating with him?

MR. MORAGHAN:  No.

THE COURT:  And are you sure he understands the nature of these proceedings?

MR. MORAGHAN:  Yes, he does.

THE COURT:  And do you believe he understands the rights he will be waiving by pleading guilty?

MR. MORAGHAN:  Yes, he does.

THE COURT:  Do you have any doubt as to his competence to plead guilty at this time, sir?

MR. MORAGHAN:  None.

THE COURT:  Thank you.

Mr. Soto, have you had enough opportunity and time to discuss your case with Mr. Moraghan?

THE DEFENDANT:  Yes.

THE COURT:  And do you believe that Mr. Moraghan has answered your questions well enough and given you enough advice and guidance for you to make a decision about pleading guilty?

THE DEFENDANT:  Yes, your Honor, very truthfully.

THE COURT:  Do you have any concerns about whether Mr. Moraghan has done a good job for you?

THE DEFENDANT:  No.

THE COURT:  Mr. Soto, I'm going to review with you the various rights which you have

that you will be giving up if you decide to plead guilty today.  I'm going to go through each of them to make sure that you are aware of them before you enter a guilty plea.  Please listen carefully because at the end of this review I'm going to ask you if you understand them and that you know you are waiving every one of those rights by entering a plea of guilty.

The first and the most important thing you must understand is that you do not have to plead guilty even if you think you are guilty.  Instead, you can require the government to prove its case at trial.  Under our system of law, the prosecutor has the burden of proving the guilt of a defendant beyond a reasonable doubt, and, if the prosecutor is unable to meet this burden, the jury has the duty to find the defendant not guilty.  It sometimes happens in American courtrooms that a jury returns a verdict of not guilty, and what the jury was saying in those cases is not necessarily they found the defendant to be innocent, but, rather, that the government had failed to meet its burden of proving beyond a reasonable doubt that the defendant was guilty.  Do you understand, sir?

THE DEFENDANT:  Yes, sir.

THE COURT:  And so even if you believe that you are guilty, you have a choice.  You may plead guilty, as you apparently now wish to do, or you can change your mind and say to the government "meet your burden of proving my guilt beyond a reasonable doubt."  The way you exercise that option is by saying "not guilty" when I ask you how you wish to plead.  You have a right to plead not guilty, and once you plead not guilty, or if you've already pled not guilty, you have a right to persist in that plea.  Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  If you plead not guilty, the Constitution and our federal laws entitle you to a speedy public trial by a jury with the assistance of a lawyer at every stage of the proceedings on the charge in the indictment.  If you could not afford counsel, you would have the right to have counsel appointed to represent you.

At the trial, you would be presumed innocent and the government would have to overcome that presumption by proving you guilty of each and every element of the crimes charged by competent evidence and beyond a reasonable doubt.  You would not have to prove that you were innocent.  If the

government were to fail to prove each and every element, the jury would have the duty to find you not guilty.

In the course of a trial, the witnesses for the government would have to come to court and testify in your presence, and your counsel would have the right to cross-examine the witnesses for the government, to object to evidence offered by the government, to offer evidence on your behalf, and to use a subpoena to obtain the attendance of witnesses to testify at trial on your behalf.

At trial, while you would have the right to testify if you chose to do so, you could not be compelled to testify. You have a constitutional right not to be required to take the stand at a criminal trial against yourself. If you decide not to testify, the Court would instruct the jury that you were exercising your right and that it could not hold that against you.

If you decide to plead guilty, however, I will have to ask you questions about what you did in order to satisfy myself that you are, in fact, guilty, and you have to answer my questions and admit your guilt.

If you plead guilty and I accept your

plea as valid, you will be giving up your constitutional right to a trial and the other rights I've just discussed.  There will be no trial of any kind and no right to appeal the conviction, although under certain circumstances you or the government may have the right to appeal any sentence I impose. I would simply enter a finding of guilty on the basis of your guilty plea.

Do you understand all the rights I've just reviewed with you, sir?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you have any questions, sir?

THE DEFENDANT:  No, your Honor.

THE COURT:  All right.  Mr. Soto, are you willing to give up your right to a trial and the other rights I've just discussed, sir?

THE DEFENDANT:  Yes.

THE COURT:  The offense to which you intend to plead guilty is a felony offense, and if your plea is accepted you will be found guilty of this offense and you will be subject to sentencing, as I will describe in greater detail in a few minutes, but you also will be subject to other collateral consequences and demands.  You would be

deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm.  A DNA sample may be collected from you to be used by the Bureau of Prisons or the probation office for analysis and indexing and inclusion in a federal database.  I understand you are a citizen, but if it turned out you were not, you could be deported or removed from the United States, denied citizenship, and denied admission to the United States in the future.

Finally, your guilty today may work to your disadvantage if in the future you are found guilty of another crime because there is a possibility you could receive a more severe penalty at that time as a result of this guilty plea and conviction.

Do you understand the additional consequences of pleading guilty, sir?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Are you willing to accept all of those consequences and still willing to give up your right to a trial and the other rights I've discussed?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Is anyone threatening or forcing you to enter a guilty plea today, sir?

THE DEFENDANT:  No, your Honor.

THE COURT:  Do you want more time to talk to Mr. Moraghan about giving up your right to trial and pleading guilty?

THE DEFENDANT:  No, your Honor.

THE COURT:  Mr. Moraghan, are you sure that Mr. Soto has had enough time and received enough information and guidance from you about the strength of the government case and the strength of any defense case such that he's able to make a knowing, intelligent and voluntary choice to plead guilty here today?

MR. MORAGHAN:  Yes, your Honor.

THE COURT:  Are you convinced that he understands the rights he will be waiving by pleading guilty?

MR. MORAGHAN:  Yes, he does.

THE COURT:  Are you convinced he understands the minimum and maximum sentence involved here?

MR. MORAGHAN:  Yes, he does.

THE COURT:  Mr. Soto, I understand there is a plea agreement in this case.  Have you had an

opportunity to review that plea agreement, sir?

THE DEFENDANT:  Yes, sir.

THE COURT:  Would you like a recess or more time to review the plea agreement or to talk to your counsel whether this is really an agreement you wish to enter in to?

THE DEFENDANT:  No, your Honor.

THE COURT:  Mr. Hall, would you outline the terms of the plea agreement, please.

MR. HALL:  Yes, your Honor.  The plea agreement is a letter from myself to Mr. Moraghan dated April 12th.  It's eight pages long.

In the plea agreement, Mr. Soto agrees to enter a plea of guilty to conspiracy to possess with intent to distribute an unspecified quantity of heroin, in violation of 21 U.S.C. Sections 841(a)(1), 841(b)(1)(C), and 846.

The plea agreement recites the elements the government would have to prove beyond a reasonable doubt in order for Mr. Soto to be convicted at trial.  I understand we'll get to those in a few minutes.

The plea agreement recites the applicable penalties, which are a sentence of up to 20 years of imprisonment, a fine of up to a million

dollars.  Also, after the service of any term of imprisonment imposed, Mr. Soto would have to serve a term of supervised release of at least three years and up to life.  If he were to violate any terms of that supervised release, he could be sentenced up to two years for each violation without any credit for any time he's already spent on supervised release.

In the plea agreement, Mr. Soto acknowledges that he understands the Court is required to consider the sentencing guidelines as well as other factors that are enumerated in 18 U.S.C. Section 3553(a) in fashioning a sentence for him.  He understands that the guidelines, sentencing guidelines, are advisory only and that the Court is not bound by them, but must consider them.

He understands that the guideline determinations will be made by the Court by a preponderance of the evidence standard based on his input and input from the government and from the probation office.  He understands that if the Court's calculation of the guidelines should differ from what he expects, he would still not be able to withdraw his plea of guilty.

In the plea agreement, the government agrees to recommend a two-level reduction for his

acceptance of responsibility, and also to move for a third-level reduction in further acknowledgement of his acceptance of responsibility, all subject to his not violating any of the terms of the plea agreement.

There is a guideline stipulation in the plea agreement to the effect that the base offense level is 24.  That is based on the parties' agreement that the guidelines equivalent of at least 100 grams, but less than 400 grams of heroin is properly attributable to Mr. Soto for his conduct described in the indictment, and was reasonable foreseeable to him and was within the scope of his conspiratorial agreement.

Under the guideline stipulation, three levels will be subtracted for his acceptance of responsibility, as I indicated.  And also two levels will be subtracted to reflect his minor role in the offense conduct, resulting in a total offense level of 19.

Based on an initial assessment, and subject to investigation to be done by the probation office, the parties calculate his Criminal History Category to be IV.  Total offense level of 19 and a criminal history IV would yield a result of a

recommended range of 46 to 57 months of imprisonment, a fine of $10,000 to $1 million, and it would be a supervised release term of three years.

The parties reserve their rights to seek departures or non-guideline sentences and to object to the same, respectively.

The defendant understands that the Court is not bound by this guideline stipulation, and should the Court calculate the guidelines differently or come to a different result in any way, he would not have the right to withdraw his plea of guilty.

There is an appeal waiver contained in the plea agreement, which I understand the Court will address with Mr. Soto later on.

The parties do reserve their rights to address the Court on pertinent issues at the time of sentencing.

In the plea agreement, the defendant acknowledges and waives his trial rights, as you've explained them to him this afternoon, Judge. He acknowledges the consequences of his guilty plea should it be accepted by the Court.

He also waives the statute of

limitations as to any offenses to which he may be amenable to prosecution for today, so that in the event the plea is vacated at a time in the future, he would be amenable to prosecution for those offenses at that time as well.

He acknowledges his guilt for the offense to which he's intending to offer a plea and also the voluntariness of that plea.  He acknowledges there are -- the plea is not a product of duress or promises not reflected in the plea agreement, and he acknowledges the satisfaction of the services of his attorney.  He acknowledges that he's not a prevailing party under the Hyde Amendment.  He acknowledges the limited scope of the agreement, that is, it is between the U.S. Attorney's Office for this district and doesn't bind any state or local authorities, and does not have any effect on any civil tax liabilities that he may have.

He acknowledges the collateral consequences that may be attached to his conviction in this case, as it is a felony, as you've explained those to him, Judge.

And the parties agree that his guilty plea, if it's accepted by the Court, will satisfy

his criminal liability in this district as a result of his participation in the conspiracy that's described in the indictment, and there are no other promises except as may be reduced to writing and signed by the parties.

THE COURT:  Thank you, Mr. Hall.  Just one question.

MR. MORAGHAN:  May I have a moment, your Honor?

THE COURT:  Yes.  I just want to make sure, you mentioned when you were talking about the criminal history, the total offense level of 19, with the assumption of a criminal history of IV, the range of 46 to 57, and then the fine range you said was 10,000 to 1 million.  The copy I have it is 10 million.  I understand there is a waiver of the right to appeal for 1 million, but I just want to make sure --

MR. HALL:  Your Honor, I apologize.  In fact, I can give you another copy, if you'd like.  I did one today that is dated April 12th, which I normally do on the day of the plea, and I saw in doing that I had written in that paragraph 10 million.

THE COURT:  So that is an error then.

MR. HALL:  It is an error.  And the one Mr. Moraghan has --

THE COURT:  The one that would be submitted is the corrected one.

MR. HALL:  That will be 1 million. That's the statutory maximum, Judge.

THE COURT:  I just wanted to make sure because you said 1 million and I was wondering if there had been a correction.  Thank you very much, Mr. Hall.

All right.  So, Mr. Soto, what I want to do now is emphasize some of the points that have been made in the plea agreement as well as discuss the sentencing procedures, some of which are implicitly discussed here and there are things I want to make explicit, and I want to describe how sentencing will work in your case.

As to any possible term of imprisonment, supervised release, criminal fine, and other parts of a sentence, there are several things you must know.  First, I cannot impose a sentence above what the statutory maximum sentence is or below any mandatory minimum.  But I have discretion to determine where within that minimum and maximum the sentence should be.  The exercise of that discretion

will be based, in large part, on the arguments and facts set forth by the government and by you, through your defense counsel, as well as the advice I receive from the United States Probation Office who will prepare a presentence investigation report.

Second, in deciding what sentence to impose, I must consider the factors set forth in the principal sentencing statute; that's 18 U.S.C. Section 3553.  Those factors include the nature and circumstances of the crime as well as your personal history and character.  I have to decide upon a sentence that reflects the seriousness of the crime, that promotes respect for the law, and that provides just punishment.  I also must consider what sentence is needed to protect the public and deter others from engaging in crimes, in addition to what sentence may serve rehabilitation goals such as to provided you with educational or vocational training and with medical care, if needed.  The statute commands me to consider the need to provide restitution and the need to avoid unwarranted sentencing disparities among defendants with similar backgrounds who have been convicted of similar criminal conduct.

Third, I have to consider what sentence

is recommended by the United States sentencing guidelines. I do not have to follow what the guidelines say, and I may depart or vary upward or downward from the guidelines, but that recommendation must be considered.

Based principally on the seriousness of the crime and on a defendant's past criminal behavior, the guidelines provide a presumptive sentencing range, a maximum and minimum sentencing range within the statute's permissible range. There may, however, be factors present in your case that would allow a departure from the presumptive guideline range. So there might be facts about your case that would cause me to sentence you to a longer or shorter term of imprisonment than the guidelines calculations.

Until you are sentenced, which will be after I receive a presentence report and hear from you, from your lawyer, from the government, you cannot know with certainty what the guidelines recommendation will be, whether there will be grounds to depart from the guidelines, and what the ultimate sentence actually will be. Moreover, in deciding what sentence to impose, I will very strongly consider, but I'm not bound by, what you

and the government have agreed to regarding sentencing in your plea agreement.  Therefore, you won't know what your sentence will be until the day of sentencing.  And if I calculate your sentence differently from what the sentencing guidelines suggest, or from what you and the government agreed to, or from what you hoped for, this does not allow you to have the sentence cancelled, to withdraw your guilty plea and to have the case go to trial.  Do you understand, sir?

THE DEFENDANT:  Yes, sir.

THE COURT:  And do you understand that I could impose a sentence more severe than you may expect?

THE DEFENDANT:  Yes, sir.

THE COURT:  And do you have any questions about what I've explained about how your sentence will be determined?

THE DEFENDANT:  No, your Honor.

THE COURT:  All right.  I understand that you wish to plead guilty to conspiracy to possess with intent to distribute an unspecified quantity of a mixture and substance containing a detectible amount of heroin, in violation of 21 U.S.C. 841(a)(1), 841(b)(1)(C), and 846, which is a

lesser included offense of the charge contained in Count One of the indictment.

I now want to discuss with you the penalties and sentencing scheme that are applicable in your case if you do plead guilty.  If you plead guilty, you may be sentenced as follows:  A maximum term of imprisonment of 20 years; a maximum supervised release term and a mandatory supervised release term -- I'm sorry, I have a maximum supervised release term -- I'm sorry, is it three years?

MR. HALL:  Maximum would be at least three years to life.

THE COURT:  Three years to life.

MR. HALL:  The maximum would be life.

THE COURT:  I'm sorry.  So maximum of three years to life.  And if you violate any condition of the supervised release, I could then sentence you to additional time in prison with no credit for time already spent on supervised release. A $1 million fine, a mandatory special assessment of $100.  Parole has been abolished, so if you are sentenced to prison you would not be released on parole.  Finally, your sentence may be enhanced depending on the findings of the presentence report.

So I want you to understand your sentence could be increased for a variety of reasons; for example, if it's determined you have a serious criminal history.  Do you understand, sir?

THE DEFENDANT:  Yes, sir.

THE COURT:  And do you understand if such matters are brought to my attention and I decide to increase your sentence because of them, you may not withdraw your guilty plea?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Mr. Soto, you also have a section in the plea agreement that relates to the waiver of your right to appeal any sentence I would impose.  Have the provisions concerning your waiver of appeal rights been explained to you, sir?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  In the plea agreement you voluntarily, knowingly and intelligently waive your right to appeal or attack the conviction collaterally or sentence of imprisonment imposed by the Court if that sentence does not exceed 57 months, a three-year term of supervised release, a $100 special assessment, and a $1 million fine, even if the Court imposes such a sentence based on an analysis different from that set forth in your

plea agreement.  And I should let you know, such waivers are generally enforceable.  Do you understand that about the waiver of appeal?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Mr. Moraghan, do you believe there are any sentencing issues that would survive the waiver?

MR. MORAGHAN:  No, I don't, your Honor.

THE COURT:  So, Mr. Soto, if, despite the waiver, you wish to appeal some issue that is claimed to survive the waiver, you must file a notice of appeal within 14 days of sentencing.  Do you understand, sir?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are you willing to waive the appeal rights I've described?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  So it's my understanding you wish to plead guilty to conspiracy to possess with intent to distribute an unspecified quantity of a mixture and substance containing a detectible amount of heroin, and this a lesser included offense of the charge contained in the indictment.

I will now ask Mr. Hall to explain the elements of this offense to which you intend to

plead guilty.  By "elements" I mean those facts that the government would have to prove beyond a reasonable doubt before you could be convicted were you to decide not to plead guilty today and you instead proceeded to trial.  I want you to bear in mind the government would have to prove each of those facts by persuading a jury of 12 persons that those facts were true beyond a reasonable doubt.  Do you understand that, sir?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Hall, would you describe the elements.

MR. HALL:  Yes, your Honor.  If the matter went to trial, the government would have the burden of establishing beyond a reasonable doubt three essential elements.  The first is that the conspiracy alleged in the indictment existed; second, that the defendant knowingly and intentionally agreed to participate in that conspiracy, and did participate in that conspiracy; and the third element is that the conspiracy involved heroin, which is a controlled substance, and that the defendant knew that and that was part of his conspiratorial agreement.

THE COURT:  Thank you very much, Mr.

Hall.

And so do you understand the elements, Mr. Soto?

THE DEFENDANT:  Yes, sir.

THE COURT:  So now we going to turn to the conduct that brings you here today.  So I want you to tell me in your own words what you did that shows that you are, in fact, guilty of the charge to which you are now offering to plead guilty, sir.

THE DEFENDANT:  I allowed Mr. Vaszuez to use my house as a location to package his drugs.

THE COURT:  Okay.  So by allowing him to use your residence as a place to package drugs, you are then admitting to having been part of the operation to distribute, distribute the substances.

THE DEFENDANT:  Yeah.

THE COURT:  And you are also saying you knew there were drugs involved.

THE DEFENDANT:  Yeah.

THE COURT:  All right.

MR. HALL:  If your Honor, please.

THE COURT:  Yes, Mr. Hall.

MR. HALL:  If you could ask him -- if the Court could ask him if the drug was heroin.

THE COURT:  Yes, that's true.  That's a

very good point.  Yes.

And you knew that what he was distributing was heroin?

THE DEFENDANT:  Yes.

THE COURT:  Thank you, Mr. Hall.

I'm now going to ask Mr. Hall to summarize what the government believes you did that makes you guilty of the charge to which you intend to plead guilty and to summarize the government's evidence against you.  Please listen carefully. When Mr. Hall is finished, I'm going to ask you whether you agree with his summary of what you did. Okay, sir?

THE DEFENDANT:  Okay.

THE COURT:  Mr. Hall.

MR. HALL:  Yes, your Honor.  If the matter were to go to trial, the government would present the testimony of special agents of the Drug Enforcement Administration, New Haven police officers, lay witnesses.  The government would present seized heroin; seized processing items, such as grinders and the like; packaging materials, such as little glassine packets, rubber bands and the like.  The government would also present seized currency believed to be proceeds of the distribution

of heroin.

The government would present the testimony of a forensic analyst with respect to the identity of the controlled substances involved, and cooperating witnesses.  The government would also present recordings of telephone conversations intercepted pursuant to orders of the District Court between March and July of 2015, over, I believe, six telephones, including one in particular used by Mr. Vaszuez, and from time to time by Mr. Rivera and Mr. Rodriguez who were associates of Mr. Vaszuez.

And it's the government's view that all of this would establish that from sometime in 2014 until July 15th of 2015, Mr. Vaszuez was engaged in the acquisition, processing, packaging and distribution of substantial quantities of heroin in the New Haven area.  He had a number of associates who assisted him with this, including Mr. Rivera, Mr. Rodriguez, who I mentioned, as well as a number of the other defendants in the case, some of whom, like Mr. Delima and Mr. Fleming, helped provide bulk heroin to Mr. Vasquez.  Others, like Mr. Collazo, Mr. Torres, Mr. Velez, would sell the heroin on the street for Mr. Vasquez.  The evidence would establish that all of these people were recorded on

telephone conversations over that first telephone used by Mr. Vasquez and Mr. Rivera and Mr. Rodriguez discussing various aspects of the heroin business.

I think over that telephone there were maybe -- there were more than 10,000 pertinent calls intercepted. Among those calls were telephone calls between Mr. Soto and Mr. Vasquez. Some of the calls -- this is why I asked your Honor to ask about the heroin. Some of the calls appear to involve the provision of personal use quantities, substantial personal use quantities of marijuana between Mr. Vasquez and Mr. Soto -- that's not what this case is about -- and from time to time certain pharmaceutical pills. That also is not what this case is about.

But, in particular, it appeared from the telephone conversations that from time to time Mr. Soto, although I don't believe he engaged in the sale of heroin, would sort of act as a middle person between Mr. Vasquez and people who wanted to acquire small quantities of drugs. In particular, as he indicated, on June 13th of 2015, he allowed Mr. Vasquez to use his house as a location for processing and packaging heroin for resale. That was something that Mr. Vasquez and his crew,

specifically Mr. Beilby and Mr. Rivera and Mr. Colon, would be sort of the packaging squad, they would package heroin at various locations for Mr. Vasquez in relatively lengthy sort of bagging sessions.

In connection with that, your Honor, on 13th of June, in call 10491, among other things, Mr. Vasquez told Mr. Soto, "I'm just saying, though, I need to work right quick for a few hours.  I'll hit you up with a couple of dollars, but just if nobody is there."

And Mr. Soto indicated, "All right, I'll clear it out.  I'll clear that out faster than in a hurry.  Let me talk to Shorty" which would be his girlfriend, "and I'll call you right back."

And then in a subsequent call Mr. Soto asked Mr. Vasquez, "Are you coming for sure?  Are you coming for sure?  Last time you made me do this you ain't come."  And then they made arrangements for Mr. Vasquez and his people to come over to Mr. Soto's residence.  And after the -- actually about -- I want to say about four hours later, Mr. Soto indicated to Mr. Vasquez, who was not present at the time, that they're finishing up right now, and Mr. Vasquez said, "All right, I'm about to shoot

down that way.  I'll be right there," indicating to the government, and probably to the jury, that Mr. Soto had, in fact, let his home be used for that purpose that I've just described.

It is the government's view that all of this would establish beyond any reasonable doubt that a conspiracy to possess and distribute heroin existed, that Mr. Soto agreed to participate in that conspiracy, and did, and that the conspiracy involved, to his knowledge, an unspecified quantity of heroin.

THE COURT:  Thank you, Mr. Hall.

Mr. Soto, I want to know whether or not you agree with Mr. Hall's summary.  It's a rather lengthy one, but, as I understand it, he's basically saying that the government has evidence that there was a drug distribution operation that was being run by Mr. Vasquez, and involved others, and you participated in this by, at least at a minimum, allowing your house to be used as a location for the resale and packaging of heroin.

THE DEFENDANT:  Yes, I did, your Honor.

THE COURT:  You'd agree with that summary?

THE DEFENDANT:  Yes, I do.

THE COURT:  Is there anything Mr. Hall said about that summary -- anything Mr. Hall said you disagree with?

THE DEFENDANT:  No, your Honor.

THE COURT:  Is there anything else you would like to say about the summary?

THE DEFENDANT:  No, your Honor.

THE COURT:  Now, let's turn back to the plea agreement.  So, Mr. Soto, does the written plea agreement and the other matters we've discussed today as outlined by Assistant U.S. Attorney Hall fully and accurately reflect your understanding of the agreement you've enter into with the government today?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Are you aware that Mr. Moraghan and Mr. Hall have discussed this agreement, your agreement to plead guilty?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And is your willingness to plead guilty today based on the fact that there is an agreement based on prior discussions between Mr. Hall and Mr. Moraghan?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And other than the promises

contained in the written agreement, has anyone made any promises that are causing you to plead guilty here today, sir?

THE DEFENDANT:  No, your Honor.

THE COURT:  Has anyone made any threats against you or is anyone in any way forcing you to plead guilty or otherwise coercing you to plead guilty here today, sir?

THE DEFENDANT:  No, your Honor.

THE COURT:  Are you pleading guilty today of your own free will because you are, in fact, guilty, sir?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  So if you are ready, why don't you sign the plea agreement now.  And when you are ready, you can bring it up to Ms. Gould.

MR. MORAGHAN:  May I approach?

THE COURT:  Yes, please.

Thank you.  Please file the plea agreement.

All right, Mr. Soto, at this time I will have the clerk of court ask you how you wish to plead.  This is your last opportunity to decide whether you wish to go through with this and enter a plea of guilty.  Are you ready to be put to plea at

this time, sir?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  All right, please stand.  I will have the charge read to you unless you waive a reading of the charge.

THE DEFENDANT:  Waive reading.

THE COURT:  All right, thank you.

Ms. Gould.

THE CLERK:  In the case of the United States of America v. Miguel Soto, Criminal No. 3:15cr120(VAB), as to the lesser included offense contained in Count One of the indictment charging you with a violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846, what is your plea?

THE DEFENDANT:  Guilty.

THE CLERK:  Your Honor, the defendant pleads guilty to the lesser included offense contained in Count One of the indictment.

THE COURT:  Thank you, Ms. Gould.

All right.  On the basis of the plea agreement; the answers given by Mr. Soto under oath, on the record, and in the presence of his counsel, Mr. Moraghan, to the questions of the Court; the remarks of Mr. Moraghan and the remarks of Assistant

U.S. Attorney Hall, it is the finding of the Court in this case, the case of United States v. Miguel Soto, that the defendant is fully competent and capable of entering an informed plea, that the defendant is aware of the nature of the charge and the consequences of the plea, and that that plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.

The Court finds that the defendant knows of his right to plead not guilty and to a trial and related rights, that he's giving up these rights by pleading guilty; that he knows of the maximum possible sentence and any minimum required sentence in terms of imprisonment, supervised release, monetary fine, forfeiture, payment of restitution, and payment of a special assessment; that he knows of the Court's obligation to consider the sentencing statute and the sentencing guidelines; and that he knows of and accepts the terms of any plea agreement provision waiving his right to appeal or to attack his sentence collaterally.

The plea to conspiracy with intent to distribute an unspecified quantity of a mixture and substance containing a detectible amount of heroin

is therefore accepted, and the defendant is now adjudged guilty of that offense.

Accordingly, a finding of guilty shall enter and this case is referred to the United States probation office for a presentence investigation.

Mr. Soto, a United States probation officer will prepare a presentence report, and this report will be submitted to the Court to assist in determining the appropriate sentence in your case. Please bear in mind that the probation officers work for the court, not the United States Attorney's Office. So your cooperation and that of your family and friends with the probation office will generally benefit you. However, it is very important that you discuss carefully what you say to the probation office because the presentence report is very important in determining your sentence under the sentencing guidelines. In addition, anything that you, your family or friends or anyone else tells the probation office could have an impact on your sentence and other consequences as well. You also have the right to have your attorney present during your discussions with the probation officer. Do you understand, sir?

THE DEFENDANT: Yes, sir.

THE COURT:  So please read and review the presentence report with your attorney.  At sentencing I will ask you if you've read the presentence report, understood it, and given any response you have to it to the probation officer or to your attorney.

Mr. Moraghan, is there an application for release pending sentencing?

MR. MORAGHAN:  Excuse me?

THE COURT:  Is there an application for release pending sentencing?

MR. MORAGHAN:  No, your Honor.

THE COURT:  All right.  Then under Local Rule 32(f), I'm going to defer setting a scheduling order.  I'd like the parties to meet and confer in consultation with the United States probation office to arrive at mutually agreeable dates for disclosure of memorandum and sentencing.  Please submit something to my courtroom deputy, Ms. Perez, on or before April 22nd.  Is that possible?

MR. HALL:  Yes, your Honor.

MR. MORAGHAN:  Yes, your Honor.

THE COURT:  Please bear in mind that the sentencing memorandum should be filed by both the government and defense counsel no later than 11 days

prior to sentencing under Local Rule 32(e).

Are there any questions or concerns regarding the sentencing schedule, Mr. Hall?

MR. HALL:  No, your Honor.

THE COURT:  Mr. Moraghan?

MR. MORAGHAN:  No, your Honor.

THE COURT:  All right.  Is there any -- yes, as I said, the two pending motions, now that the defendant has pled guilty and I've entered that plea and a finding of guilty, the motion for dismissal of charges and to incorporate lesser offense is moot as well as the defendant's motion for a bill of particulars.

Any further business?

MR. HALL:  No, thank you.

MR. MORAGHAN:  No, your Honor.

THE COURT:  All right.  We are adjourned then.

(Proceeding concluded 2:45)

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


                              4/27/16

                                Date


                    /S/   Sharon Montini

                         Official Reporter